1 | McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
2 | Timothy J. Buchanan, #100409
   *tim.buchanan@mccormickbarstow.com*
3 | 7647 North Fresno Street
Fresno, California 93720
4 | Telephone:    (559) 433-1300
Facsimile:    (559) 433-2300

Attorneys for Plaintiffs

*[Additional counsel listed on signature page]*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

DALE H. VAN KIRK and DIANA K. VAN KIRK, as TRUSTEES OF THE VAN KIRK FAMILY TRUST, and DIANA K. VAN KIRK, individually,

Plaintiffs,

v.

TD AMERITRADE FUTURES & FOREX LLC,

Defendant.

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

## COMPLAINT AND DEMAND FOR JURY TRIAL

1.      Plaintiffs, DALE H. VAN KIRK and DIANA K. VAN KIRK, as TRUSTEES OF THE VAN KIRK FAMILY TRUST as to Acct. No. ending in  419, and DIANA K. VAN KIRK, as to Acct. No. ending in 422, sue Defendant TD AMERITRADE FUTURES & FOREX LLC, and allege as follows.

## INTRODUCTION

2.      Plaintiffs are customers of TD Ameritrade Futures & Forex LLC ("TDAFF").

3.      As described in detail below, TDAFF, which had hundreds of individual account holders who like Plaintiffs held investments in options on E-Mini S&P 500 futures contracts ("ES

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

Options"), force-liquidated Plaintiffs' ES Options contracts, and thousands of other TDAFF clients' ES Options contracts, after the underlying stock markets closed on February 5, 2018.  By liquidating thousands of ES Options contracts in the "After-Hours Market," as opposed to the much more actively traded daytime market, TDAFF caused Plaintiffs to needlessly incur substantial losses.

4.     While Plaintiffs recognize that TDAFF had discretion to liquidate, TDAFF did not have discretion to liquidate in bad faith and in the reckless and commercially unreasonable way that it did.  Hours before the stock markets closed on February 5, TDAFF had streams of information about the markets' deteriorating condition — everything it needed to exercise its discretion to liquidate in an active and functioning market prior to closing if it chose to liquidate.  TDAFF knew or should have known that liquidating thousands of ES Options contracts while the underlying stock markets were closed — in an opaque, volatile and extremely costly in the After-Hours Market following an extraordinarily volatile trading day — would be catastrophic.

5.     Yet that is exactly what TDAFF did, causing approximately $2 million dollars in losses to Plaintiffs[1] — losses that would have been significantly reduced or completely avoided had TDAFF liquidated before the close of the underlying stock markets on February 5.  Once it chose not to liquidate before the close of the underlying stock markets on February 5, TDAFF should then have waited until the underlying markets reopened on February 6 if it still wanted to force-liquidate Plaintiffs' accounts.  TDAFF would then likely have realized that it was not appropriate to liquidate at all.  Indeed, shortly after the markets reopened, prices returned to preclosing levels.

6.     TDAFF liquidated in the After Hours market in bad faith, for the purpose of capping its own exposure to its margin lending to hundreds of TDAFF account holders. In this way TDAFF benefitted from its actions at the expense of Plaintiffs.

7.     As described in more detail below, TDAFF's failure to liquidate its positions in a commercially reasonable manner was reckless and violated the implied covenant of good faith and

---

[1]     Inclusive of the purported deficiency balance claimed by a TDAFF affiliate.

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

fair dealing contained in its Futures Client Agreement.

8.     TDAFF's reckless actions and course of practice make Defendant liable for actual damages incurred by Plaintiffs.

9.     In addition, TDAFF failed to make demand upon Plaintiffs before force-liquidating their ES Options positions.   As a result, TDAFF is precluded from recovering the purported deficiency balances remaining in Plaintiffs' accounts.   Notwithstanding, and in violation of TDAFF's contract with Plaintiffs, TDAFF through its affiliate TD Ameritrade, Inc. ("TDA"), has sought to recover from Plaintiffs purported deficiency balances in their accounts resulting from TDAFF's improper liquidation.

10.     Plaintiffs also seek declaratory relief to prevent TDAFF from relying on an electronically "signed" arbitration agreement to compel arbitration of this matter.   TDAFF is a futures commission merchant ("FCM") governed by CFTC regulations. As demonstrated below, the method TDAFF uses to maintain arbitration agreements does not comply with CFTC rules that regulate electronic signatures. As a result, those arbitration agreements, including any purported agreement signed by Plaintiff Diana K. Van Kirk, are void.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(b) because (i) the matter in controversy exceeds $75,000, exclusive of interest and costs; and (ii) Plaintiffs are citizens of a different state than Defendant.

12.     The Court has personal jurisdiction over Defendant because it regularly and systematically operates, conducts, engages in and carries out a business or business venture in California, and because it has an office or agency in California in this District.

13.     Venue is proper in this District under 28 U.S.C. § 1391 because TDAFF is subject to personal jurisdiction in this District for the claims alleged and a substantial part of the events and omissions giving rise to these claims occurred in this District.

## PARTIES

14.     The Van Kirk Family Trust (the Trust") is a trust created and maintained in the state of California.   Dale H. Van Kirk and Diana K. Van Kirk are the Trustees of the Trust.   The

1  Trust was a client of TDAFF at all relevant times holding the TDAFF account number ending in

2  419.

3      15.    Plaintiff Diana K. Van Kirk is an individual and a resident and citizen of the state

4  of California. She was a client of TDAFF at all relevant times holding the TDAFF account number

5  ending in 422.

6      16.    TDAFF is a Futures Commission Merchant ("FCM") with the Commodity Futures

7  Trading Commission (the "CFTC"). TDAFF is a member of, and its corresponding services

8  functions are regulated by, the National Futures Association ("NFA"). TDAFF has its principal

9  place of business in Chicago, Illinois.  TDAFF is engaged in, among other things, providing

10  futures and foreign exchange trade execution services to clients of TDA.  At all relevant times,

11  TDAFF conducted business in this District, where it provided its services to Plaintiffs.   TDAFF is

12  a subsidiary of TD Holding.  TDAFF has three manager members. David R. Kimm is a citizen of

13  New Jersey. Steven M. Quirk is a citizen of Illinois. And Judith Ricketts is a citizen of Nebraska.

14  **FACTUAL ALLEGATIONS**

15  **A.**    <u>**Plaintiffs Purchase Options on Futures Contracts**</u>

16      17.    Plaintiffs are individual investors with brokerage accounts at TDA.  Some of

17  Plaintiffs' investments, including the investments at issue here, were options on futures contracts

18  traded through TDAFF, TDA's futures-related affiliate.

19      18.    Futures contracts "are financial contracts obligating the buyer to purchase an asset

20  or the seller to sell an asset, such as a physical commodity or a financial instrument, at a

21  predetermined future date and price. Futures contracts detail the quality and quantity of the

22  underlying asset; they are standardized to facilitate trading on a futures exchange." *See*

23  Investopedia, "What are 'Futures," available at: https://www.investopedia.com/

24  terms/f/futures.asp.

25      19.    An option on a futures contract gives the option holder the right to buy or sell a

26  futures contract.

27  **B.**    <u>**E-Mini S&P 500 Futures Contracts**</u>

28      20.    On February 5, 2018, Plaintiffs held substantial investments in options on E-Mini

S&P 500 futures contracts ("ES Options") through TDAFF.  "ES" is the ticker symbol for E-Mini S&P 500 futures contracts.

21.     ES Options are options on futures contracts. They are made on the "Globex" electronic trading platform, which is operated by the Chicago Mercantile Exchange (the "CME").

22.     The E-Mini S&P 500 futures contracts that are tied to the ES Options are based on the Standard & Poor's 500 stock index, which is comprised of 500 individual stocks traded on the New York Stock Exchange ("NYSE") and NASDAQ exchange.

23.     Like stocks and stock indexes, the value of ES Options changes throughout the trading session in response to economic events and market activity. However, ES Options are not securities. They are commodities.

24.     ES Options are made actively on the Globex between 8:30 a.m. and 3:15 p.m. CT on weekdays, when the underlying S&P 500 stocks are being traded on the NYSE and NASDAQ. When those markets close at 3:15 p.m. CT, the making of ES Options on the Globex stops for 15 minutes, then stops again for an hour from 4 p.m. to 5 p.m. CT, after which time ES Options can be made through Globex in an "after hours" market throughout the night (the "After Hours Market").

25.     Because the underlying S&P 500 stocks are not traded after hours, the AfterHours Market for ES Options, which are derivative of those stocks, is substantially less active than is the market for ES Options when the underlying markets are open.

26.     It is widely known and accepted that in a period of substantial volatility, parties willing to write options in the AfterHours Market will demand a very high risk-premium. The After Hours Market thus draws third-party "market makers" or "liquidity providers" ("LP's"). LP's customarily work closely with large brokers like TDAFF and TDA. Because of the limited competition in the overnight market, these LP's dictate the terms for their participation in the transactions. Particularly when the markets are volatile, LP's set inflated prices and hedge against those positions prior to completing the trades, so as to substantially reduce their downside risk. Because the stock markets that underlie the S&P 500 index are closed, the ability of parties to hedge ES Options positions in the After Hours market is limited. The hedging is, therefore,

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

5
COMPLAINT

1   significantly more expensive, further inflating prices in the After Hours market. On the other side

2   of the deal, when a broker like TDAFF liquidates tens of thousands of ES Option contracts in the

3   After Hours Market, investors like Plaintiffs pay a hefty premium price for positions liquidated in

4   the After Hours Market.

**C.**     **Margin**

6        27.     ES Options are usually traded on "margin." Margin refers to the practice of buying

7   an asset for only a portion of the asset's value and borrowing the rest from the broker. The broker

8   acts as a lender and uses the assets in the investor's account as collateral.

9        28.     Margin trading confers a higher profit potential, but also amplifies the effects of an

10  investor's losses.

**D.**     **TDA and TDAFF Accounts**

12       29.     To invest in and trade ES Options with TDAFF, each Plaintiff opened a securities

13  brokerage account with TD Ameritrade, Inc. (the "Securities Account") before opening a

14  commodities account with TDAFF (the "Futures Account").

15       30.     In order to open their Futures Accounts, Plaintiffs were required to enter into

16  TDAFF's form contract (the "Futures Client Agreement").   Section 6 of the Futures Client

17  Agreement contains a provision giving TDAFF "sole discretion [to] offset any of Client's open

18  positions in Commodity Interests (including futures or options on futures) so as to eliminate [a]

19  margin deficiency or insecurity . . . ." A copy of the main text of the Futures Client Agreement is

20  attached as **Exhibit A-1**. The discretion provided by the Futures Client Agreement is constrained

21  by an implied duty to exercise that discretion in good faith and according to commercial standards

22  of reasonableness and fair dealing.

23       31.     TDAFF also reserved for itself a lien or security interest on all "Commodity

24  Interests" in the Futures Account, including the ES Options held by Plaintiffs.

25       32.     The Futures Client Agreement does not disclose that TDAFF was reserving for

26  itself the right to liquidate Plaintiffs' commodities in the illiquid and dysfunctional After Hours

27  Market, as described below.

28       33.     Plaintiffs understood and accepted that investments in ES Options on margin

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

1  carried investment risk.  What Plaintiffs did not know or accept was that TDAFF would expose

2  them to even greater risk by recklessly liquidating Plaintiffs' positions in a commercially

3  unreasonable way in an illiquid and dysfunctional After-Hours Market that would exponentially

4  increase their losses.

5        34.     Plaintiffs also accepted and agreed to be bound by the terms of several risk

6  disclosure documents incorporated into and made part of TDAFF's Futures Client Agreement.   A

7  copy of the "Disclosures" incorporated into the Futures Client Agreement is attached as **Exhibit**

8  **A-2**.   A copy of the Futures Account Signature Card signed by Plaintiffs is attached as **Exhibit A-**

9  **3**. Among other things, the Disclosures informed Plaintiffs that:

10  > If the market moves against your position, ***you may be called upon by your broker to***
11  > ***deposit*** a substantial amount of additional margin funds, on short notice, in order to
   > maintain your position, ***If you do not provide the required funds*** within the time required
12  > by your broker, **your position may be liquidated at a loss, <u>and</u>** ***you will be liable for any***
   > ***resulting deficit in your account***.

13

14  Disclosures at 1, ¶ 1 (emphasis added).

15        35.     Despite this provision, TDAFF did not make a margin call or otherwise request or

16  require Plaintiffs to deposit any purportedly required funds and did not give Plaintiffs any notice,

17  before liquidating the ES Options in their accounts in the After Hours Market of February 5, 2018.

18        36.     TDAFF's affiliate TDA now contends that Plaintiffs owe a substantial deficiency

19  debt to TDA resulting from TDAFF's reckless and commercially unreasonable liquidation of

20  Plaintiffs' ES Options positions way in the After Hours Market.

21        37.     A Regulatory Compliance Analyst for TDAFF's affiliate TDA previously provided

22  to Plaintiffs, through their counsel, a copy of a "Futures Arbitration Agreement" that was

23  purportedly signed "electronically" by Plaintiff Diana Van Kirk.   A copy of the Futures

24  Arbitration Agreement is attached as **Exhibit B**.

25        38.     For the reasons described below, the purported electronic signature relied on by

26  TDAFF is invalid.  Because the Futures Arbitration Agreement was not validly signed by Diana

27  (or Dale) Van Kirk, it is not enforceable.

28  ///

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

7
COMPLAINT

**E.      The Events of February 5, 2018**

39.     As the day progressed on February 5, 2018, the value of several of the stocks within the S&P 500 index fluctuated significantly and, in many instances, dropped. By the early afternoon, these falling values and fluctuations, and a significant increase in overall trading volume, caused significant and unusual volatility in the S&P 500 index. This volatility, in turn, significantly increased the amount and speed at which prices fluctuated in the market for ES Options.

40.     By the early afternoon of February 5, this volatility and price fluctuation was or should have been known to TDAFF.    By that time, the price at which options holders were offering to sell (the "ask") ES Options contracts had increased substantially in a matter of hours, with the distance (or "spread") between those asks and the maximum price that buyers were willing to pay for them (the "bid") widening significantly.  At the same time, the implied volatility ratios for ES Options also increased significantly from the noon hour to the close of the daytime market.

41.     To the extent that TDAFF concluded that Plaintiffs' option positions rendered their accounts under-margined or insecure, it could have closed (or "covered") Plaintiffs' short ES Options put positions before the close of the markets at 3:15 CT.  But TDAFF chose not to do so. Instead, TDAFF exposed Plaintiffs to exponentially larger losses in the illiquid and dysfunctional After Hours Market.   Alternatively, if TDAFF did not conclude that Plaintiffs' options positions rendered their accounts under-margined or insecure until after the close of the markets at 3:15 CT, TDAFF should have waited to liquidate until February 6, after the underlying stock markets reopened at 8:30 a.m. CT.

42.     Instead of taking either of the commercially reasonable alternatives outlined above, TDAFF acted recklessly. It decided to liquidate Plaintiffs' positions together with tens of thousands of its other clients' ES Options after the underlying markets closed at 3:15 p.m. CT. TDAFF knew that in this After Hours Market, there would be a considerable reduction in liquidity for ES Contracts and that the prices charged for closing ES put Options positions would be substantially higher than would be charged when the underlying markets were open.

43.     As TDAFF knew, the After Hours Market does not exhibit the same trading behavior as the regular market, it is in effect a different market.  For example, trades do not happen as often. Between December 2017 and February 2018, the number of ES Options contracts traded on average every 15 minutes during the regular market (when the underlying stock market is open) was over 12 times more than the number of ES Options contracts traded on average every 15 minutes during the After Hours Market.  The difference in number of ES Options contracts traded on average every 15 minutes during the regular market on February 5 although not as pronounced was still nearly four times greater than the average traded every 15 minutes during the After Hours market.  Similarly, the average time between trades during the After-Hours Market between December 2017 and February 2018 was over four times greater than during the regular market with a standard deviation between trades of almost four times greater in the After-Hours Market than in the regular market. During the After-Hours Market on February 5, the average time between trades was nearly three times greater than during the regular market with a standard deviation between trades of 3.7 times greater in the After-Hours Market than in the regular market.

44.     As importantly if not more importantly, a comparison of the bid/ask spreads — the difference between the average price at which sellers offer to sell an ES Option contract versus the average price at which buyers seek to purchase it for — shows a stark disparity between the regular market and the After Hours Market.  For example, the average bid/ask spread in the regular market on February 2, 2018, was 7% (with a standard deviation of 6.1%), while the average spread in the After Hours Market jumped to 16.9% (*with a standard deviation of 159.4%*). TDAFF had no reason to believe that this disparity would not continue on February 5, 2018.  And in fact it did continue, with the After Hours Market spreads increasing to dramatic levels -- 33.8% (*with a standard deviation of more than 2000%*).

45.     As these figures show, the regular market and After Hours Market are essentially two different markets.  This difference stems in part from the limited availability and therefore substantially increased cost of hedging in the After Hours Market.  A key component in the liquidity of any market for derivative contracts is the existence of other open and concurrently trading markets in which participants can hedge their positions.  The market for ES Options

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

correlates to the S&P 500 index, as does the SPX, which trades only when the underlying stock markets are open. During the regular market, when the underlying stock markets are open, the S&P 500 index and the full S&P 500 futures contracts (SPX) are used to hedge ES Options trades. This drives down bid/ask spreads while increasing the frequency of those bids and offers — factors that increase liquidity.

46.     TDAFF knew that when the regular market closed on February 5, LPs (market makers) would be limited in their ability to hedge, thereby driving up the bid/ask spreads, driving down liquidity and substantially increasing the cost of closing or covering ES Options contracts.

Indeed, when the underlying stock markets closed on February 5, the liquidity of E-mini futures and ES Options contracts predictably retreated from levels that occurred during the period just before the underlying market closing.  Bid/ask spreads predictably widened significantly.

47.     As a result, the price of ES put Options skyrocketed, dramatically increasing the losses of Plaintiffs when TDAFF recklessly closed out their ES Options positions together with tens of thousands of others in the After-Hours Market.

48.     The After-Hours trades by TDAFF had a disastrous impact on investors like Plaintiffs who held short put options on E-mini futures contracts.

49.     TDAFF's liquidation of Plaintiffs' ES Options positions together with tens of thousands of others in the After Hours Market was reckless, commercially unreasonable and in bad faith.  If TDAFF wanted to liquidate Plaintiffs' positions, it should have done so before the stock markets closed at 3:15 CT on February 5.   Once TDAFF chose not to liquidate before 3:15 CT, it should have waited until the markets reopened on February 6. But what TDAFF did — liquidate in an illiquid After Hours Market where Plaintiffs would unquestionably be forced to pay a higher price to liquidate — was reckless.

50.     TDAFF's actions exposed Plaintiffs to much greater risks than they expected or is customary, even for margined options on futures trades. TDAFF knew or should have known that its actions would greatly increase losses, and needlessly so.

51.     TDAFF benefitted from its actions by capping and limiting its own exposure to their margin lending to hundreds of TDAFF clients' accounts, including Plaintiffs' accounts.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

10
COMPLAINT

TDAFF and Plaintiffs had divergent interests. Plaintiffs' primary interest was preserving the cash value of their margined accounts.  In furtherance of this objective, Plaintiffs did not panic-sell on February 5.  TDAFF, on the other hand, had hundreds of futures account customers whose accounts held ES Options.  TDAFF was primarily interested in capping its margin lending exposure to these hundreds of accounts.  That led TDAFF to unreasonably liquidate Plaintiffs' positions in a market that it knew would result in catastrophic losses to Plaintiffs, while also knowing that, from TDAFF's perspective, a considerable portion of its own margin lending losses could be recovered by the collateral in Plaintiffs' accounts.

52.     Even had TDAFF not liquidated for selfish motives as it did, TDAFF's actions were reckless as described herein.

53.     TDAFF now contends that Plaintiffs suffered enormous losses in their accounts. TDAFF contends that the substantial positive values in those accounts were eliminated.   Further, and in violation of the Disclosures incorporated into and made part of its Futures Client Agreement, even though TDAFF failed to make any margin call or give Plaintiffs notice before liquidating the ES Options in their accounts, TDAFF's affiliate TDA now contends that Plaintiffs owe a substantial deficiency debt to TDA.

54.     Any recovery by TDAFF (or its affiliate TDA) of any deficiency debt purportedly owed by Plaintiffs is barred by TDAFF's breach of the Disclosures incorporated into and made part of its Futures Client Agreement.

55.     TDAFF required Plaintiffs to open TDA accounts in order to trade ES Options with TDAFF.  Once Plaintiffs' losses were incurred, TDAFF or TDA also liquidated securities positions held in Plaintiffs' TDA accounts.  TDA has sent letters demanding payment for purported deficiencies in Plaintiffs' accounts and has actively sought to recover purported deficiency balances from Plaintiffs.

**F.     TDAFF's Acts Violated the Implied Covenant of Good Faith and Fair Dealing**

56.     As described above, TDAFF intended to, and did, execute a massive after-hours liquidation of short put positions in ES Options in Plaintiffs' accounts and the accounts of hundreds of other TDAFF customers.   Given the market conditions described above, TDAFF's

1  decision to do so was reckless or worse.    TDAFF's decision was an abuse of its discretion to

2  liquidate, made in bad faith to promote TDAFF's interests over Plaintiffs' interests.   In doing so,

3  TDAFF breached its obligations of good faith, fair dealing and commercial reasonableness to

4  Plaintiffs, resulting in substantial damages to Plaintiffs.

5        57.     Further, if TDAFF suffered any out-of-pocket losses from the liquidation of

6  Plaintiffs' ES Options, the losses were self-imposed.  Any "losses" claimed by Defendant simply

7  reflect the valuations improperly attributed to Plaintiffs' ES Options after TDAFF's reckless and

8  commercially unreasonable after-hours liquidation of Plaintiffs' accounts substantially destroyed

9  the value of those ES Options.

10       58.     Any recovery by TDAFF (or its affiliate TDA) of any deficiency debt purportedly

11 owed by Plaintiffs is also barred by TDAFF's breach of the covenant of good faith and fair

12 dealing.

**CLAIMS FOR RELIEF**

**COUNT 1**

**Breach of Implied Covenant of Good Faith and Fair Dealing**

16       59.     Plaintiffs incorporate the allegations of paragraphs 1 through 58 as if fully set forth

17 herein.

18       60.     Plaintiffs signed the Futures Agreement, which contains a provision giving TDAFF

19 discretion to liquidate Plaintiffs' ES Options positions.

20       61.     Implicit in that provision is a covenant of good faith and fair dealing that TDAFF

21 will exercise its discretion to liquidate in a good faith and in a commercially reasonable manner.

22       62.     TDAFF acted arbitrarily, capriciously and unreasonably when it liquidated Plaintiffs'

23 ES Options positions, together with tens of thousands of its other clients ES Options positions, in the

24 After Hours Market.   If TDAFF wanted to liquidate Plaintiffs positions, it should have either

25 liquidated before the close of the stock markets on February 5 or waited until the stock markets

26 reopened on February 6.  By instead liquidating as part of its mass liquidation in the illiquid

27 AfterHours market, TDAFF breached the Futures Client Agreement's implied covenant of good

28 faith and fair dealing.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

63.     Plaintiffs have been damaged as a result.

**COUNT 2**

**Breach of Disclosures Incorporated into the Futures Client Agreement**

64.     Plaintiffs incorporate the allegations of paragraphs 1 through 58 as if fully set forth herein.

65.     The "Disclosures" incorporated into the Futures Client Agreement informed Plaintiffs that:

> If the market moves against your position, ***you may be called upon by your broker to deposit*** a substantial amount of additional margin funds, on short notice, in order to maintain your position, ***If you do not provide the required funds*** within the time required by your broker, **your position may be liquidated at a loss, <u>and</u>** ***you will be liable for any resulting deficit in your account***.

Disclosures at 1, ¶ 1 (emphasis added).

66.     TDAFF did not make a margin call or otherwise request or require Plaintiffs to deposit any purportedly required funds, and did not give Plaintiffs notice, before liquidating the ES Options in their accounts in the After Hours Market of February 5, 2018.

67.     TDAFF's affiliate TDA now contends that Plaintiffs owe a substantial deficiency debt to TDA resulting from TDAFF's reckless and commercially unreasonable liquidation of Plaintiffs' ES Options positions way in the After Hours Market.

68.     Because TDAFF failed to comply with the terms of the Disclosures, TDAFF (and its affiliate, TDA) is barred from seeking to enforce any purported deficiency balance in Plaintiffs' accounts.

**COUNT 3**

**DECLARATORY RELIEF**

69.     Plaintiffs incorporate the allegations of paragraphs 1 through 58 as if fully set forth herein.

70.     An actual and justiciable controversy exists between Plaintiffs and TDAFF regarding the validity of Futures Arbitration Agreement that was purportedly electronically signed by Plaintiff Diana Van Kirk (and any other TDAFF arbitration agreement that TDAFF may

1   contend that Plaintiff Dale Van Kirk electronically signed).

2   71.    The CFTC regulations governing the use of electronic signatures contain two

3   principal requirements.  First, they define an "electronic signature" as an "electronic . . . symbol"

4   that is "**attached to or logically associated with** a *record*."  *See* 17 C.F.R. § 1.3 (emphasis added).

5   In addition, in order for an FCM to rely on electronic signatures, it:

6       **[M]ust adopt and use reasonable safeguards** regarding the use of electronic signatures,
        **including at a minimum safeguards employed to prevent alteration of the electronic
7       record**  . . ..

8

9   17 C.F.R. § 1.4 (emphasis added).   TDAFF does not comply with either requirement.

10   72.    First, when a TDAFF client initially "signs" a purported arbitration agreement,

11   TDAFF's computer systems do not even store a copy of the relevant "record," i.e., the text

12   supposedly agreed to by the client.

13   73.    TDAFF also does not employ even "minimum safeguards . . . to prevent alteration

14   of the electronic record . . . after such record has been electronically signed."  *See* 17 C.F.R. § 1.4.

15   The arbitration language used by TDAFF resides only inside of its software code.   TDAFF does

16   not perform periodic tests of the system to determine whether it accurately stores changes to prior

17   versions of the software code that includes arbitration language.   Moreover, at any given time 20

18   different programmers could have access to the software system.

19   74.    TDAFF requires no special authorization before any programmer can modify

20   arbitration language.  Nor is there any warning or notification to supervisors when arbitration

21   language is modified.

22   75.    More importantly, although there is nothing that would prevent TDAFF's system

23   from creating and storing in a safe place a .pdf or other record that would safely preserve

24   arbitration language at the time that the customer agrees to it, TDAFF does not have such a system

25   in place.   TDAFF has not employed even "minimum safeguards . . . to prevent alteration of" it's

26   electronic arbitration records.   *See* 17 C.F.R. § 1.4.

27   76.    Plaintiffs contend that TDAFF's failure to comply with CFTC regulations

28   regarding electronic signatures renders any electronic signature on a TDAFF Futures Arbitration

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

14
COMPLAINT

Agreement invalid and the agreement unenforceable.

77.     Furthermore, there exists a present controversy between Plaintiffs and TDAFF in that TDA has informed Plaintiffs that they must arbitrate any dispute against TDAFF.

78.     Accordingly, pursuant to 28 U.S.C. section 2201, Plaintiffs request this Court declare that TDAFF 's electronic signatures are invalid renders and that the invalidity of the signatures renders the Futures Arbitration Agreement unenforceable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for a judgment:

A.     on Count 1 awarding damages, including pre-judgment interest, in an amount to be determined at trial;

B.     on Count 2 determining that TDAFF (and its affiliate TDA) is not entitled to recover any purported deficiency amounts from Plaints;

C.     on Count 3 determining that TDAFF's Futures Arbitration Agreement is unenforceable; and,

D.     granting such other relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs request a jury trial for any counts for which a trial by jury is permitted by law.

Respectfully submitted,

Dated: February 4, 2019

By:   _/s/ Timothy J. Buchanan_____

**McCormick Barstow LLP**
Timothy J. Buchanan (State Bar No. )
7647 N. Fresno Street
Fresno, CA 93720
Tel: (559) 433-1300
Email: Tim.Buchanan@mccormickbarstow.com

(*pro hac vice application pending*)
**RODRIGUEZ TRAMONT & NUÑEZ P.A.**
FRANK R. RODRIGUEZ
255 Alhambra Circle
Suite 1150
Coral Gables, FL 33134

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

15
COMPLAINT

1

Telephone: (305) 350-2300
Email: frr@rtgn-law.com
        pan@rtgn-law.com

(*pro hac vice application pending*)
**Levine Kellogg Lehman
Schneider + Grossman LLP**
Jason K. Kellogg
201 South Biscayne Boulevard
Citigroup Center, 22nd Floor
Miami, FL 33131
Telephone: 305 403-8788
Email: jk@lklsg.com
        mco@lklsg.com
*Attorneys for Plaintiffs*

2

3

4

5

6

7

8

9

10

037398-000000 5681267.1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

COMPLAINT

**DALE H. VAN KIRK and DIANA K. VAN KIRK, as TRUSTEES OF THE VAN KIRK FAMILY TRUST, and DIANA K. VAN KIRK, individually v. TD AMERITRADE FUTURES & FOREX LLC**

**EXHIBIT "A-1"**

**TO COMPLAINT; DEMAND FOR JURY TRIAL**

 **Ameritrade**

# Futures Client Agreement

TD Ameritrade Futures & Forex LLC
600 W. Chicago Ave. Suite 100 ■ Chicago, IL 60654-2597
Phone: 773-435-3210 ■ Fax: 773-435-3232

In consideration of the agreement of TD Ameritrade Futures & Forex LLC ("TD Ameritrade Futures & Forex" or "the Firm"), a registered Futures Commission Merchant ("FCM") with the CFTC, to act as broker for the undersigned ("Client") in the purchase or sale of futures contracts and options on futures (hereinafter, "Commodity Interests"), in the Client's account for trading futures ("Account") Client agrees, in respect to all Accounts that Client now has or may at any future time have with TD Ameritrade Futures & Forex, or its successors, including Accounts from time to time closed and then reopened, as follows:

## 1. AUTHORIZATION AND ACKNOWLEDGMENTS

a. Client understands that TD Ameritrade Futures & Forex has not undertaken and will not undertake an independent evaluation of whether Commodity Interests trading or any transaction entered into by Client hereunder is appropriate for Client, and TD Ameritrade Futures & Forex is relying solely on Client's representations in this regard. All transactions effected for the Account and all fluctuations in the market prices of Commodity Interests or other property carried in the Account are at Client's risk, and Client shall be solely liable for such risks under all circumstances. Client acknowledges that Client is willing and financially able to sustain any losses resulting therefrom, and Client's unconditional obligation to pay TD Ameritrade Futures & Forex the amount of any such losses.

b. Client authorizes TD Ameritrade Futures & Forex to (i) purchase and sell Commodity Interests upon Client's oral, written, or electronic instructions; and (ii) employ any clearing broker, executing broker, or floor broker, as Client's agents in connection with the execution, clearing, carrying, delivery, and/or settlement of any such transactions. The Firm shall not be responsible to Client in any case for any executing broker's or floor broker's inability to execute orders, nor shall TD Ameritrade Futures & Forex be responsible in any way for any executing broker or floor broker selected by Client. All orders placed by Client may be executed on any exchange or other market where such business is transacted by TD Ameritrade Futures & Forex or its agent in the discretion of the Firm or such agent, deemed to be most desirable, unless otherwise instructed.

c. Client shall be bound by, and TD Ameritrade Futures & Forex may rely on and act in accordance with, any oral or written instructions which TD Ameritrade Futures & Forex believes, in good faith, to have been given by Client or an Individual authorized to act on Client's behalf, including but not limited to any individual identified in writing by Client to TD Ameritrade Futures & Forex as authorized to act on Client's behalf.

d. Transactions shall be subject to the constitution, by-laws, rules, regulations, customs, and usages of the exchange or market where executed (and of its clearing house if any) and to any applicable Federal or State law, including but not limited to the provisions of the Commodity Exchange Act (the "Act"), as amended, and the rules and regulations thereunder (collectively, "Applicable Law"). TD Ameritrade Futures & Forex shall not be liable to Client as a result of any action taken by the Firm or its agent to comply with any Applicable Law. Any failure by TD Ameritrade Futures & Forex to comply with any Applicable Law shall not relieve Client of any obligations under this Agreement nor be construed to create rights thereunder in favor of Client against the Firm.

e. Client further acknowledges and agrees that: (i) Client is exercising its own judgment and decision with respect to any instructions given to TD Ameritrade Futures & Forex to execute transactions for the Account, without reliance on any information or other statements that may be made by TD Ameritrade Futures & Forex, and the Firm makes no representation or warranty as to the value, merits, or suitability of any order placed or transaction undertaken by Client; (ii) TD Ameritrade Futures & Forex shall have the right to limit the size and number of open contracts (net or gross) held in the Account, refuse the acceptance of orders for new positions, and/or require Client to reduce open positions; (iii) TD Ameritrade Futures & Forex has no fiduciary obligations to Client, and the duties and obligations of the Firm to Client are limited to those expressly set forth in this Agreement; (iv) TD Ameritrade Futures & Forex is acting solely as Client's broker in accordance with the terms of this Agreement and is not otherwise acting as an agent or a fiduciary to Client and has no discretionary authority or control over the Account; (v) the Firm has no financial or other obligations as a principal to Client under the terms of this Agreement in connection with any transaction in Commodity Interests executed, cleared, or carried by TD Ameritrade Futures & Forex for Client; (vi) TD Ameritrade Futures & Forex may, in its sole discretion, decline to accept from other brokers Commodity Interests executed by such brokers on an exchange for Client and proposed to be "given up" to the Firm for clearance or carrying in the Account; and (vii) Client will, following a request by the Firm, promptly provide to TD Ameritrade Futures & Forex copies of its latest audited financials (if applicable) and any such other financial or other information as the Firm may reasonably request.

## 2. LIEN AND SECURITY INTEREST

Client grants TD Ameritrade Futures & Forex a first lien and security interest in all monies, open positions in Commodity Interests, documents representing title to commodities such as warehouse receipts and the commodities represented thereby and any other property of Client (either individually or jointly with others) now or in the future held by the Firm in the Account or otherwise in the Firm's possession or control for any purpose, including safekeeping (collectively, the "Collateral"), to secure payment and discharge of all obligations of Client to TD Ameritrade Futures & Forex or any affiliate of the Firm, which Collateral is subject to the general lien of, and right of set-off by, TD Ameritrade Futures & Forex for any and all such obligations. Client agrees to execute any and all documents including Uniform Commercial Code financing statements, as deemed necessary or appropriate by TD Ameritrade Futures & Forex to evidence or perfect its security interest in any Collateral. Client has not granted and will not grant a security interest in the Collateral or the Account (other than the security interest granted to the Firm hereunder) to any other party without TD Ameritrade Futures & Forex's written consent. Except as prohibited by Applicable Law, all Collateral now or hereafter held or carried by the Firm for Client may, from time to time, without notice to Client, be pledged, hypothecated, loaned, or invested by the Firm to or with others, separately or with any other property. TD Ameritrade Futures & Forex shall not be required to retain in its possession for delivery a like amount of, or to pay interest or to account to Client for any profits on, such property. All transactions for or on Client's behalf may be included in a single Account whether or not such transactions are segregated on TD Ameritrade Futures & Forex records into separate Accounts, either severally or jointly with others.

TDA 600 F 03/15

### 3. AUTO SWEEP AND TRANSFERS

To open an account, Client understands that TD Ameritrade Futures & Forex requires that a Client first have an Account for trading securities ("Securities Account") with its affiliate, TD Ameritrade, Inc. established. Client understands and agrees that if available cash is held in the Account at the end of the trading day, such available cash is automatically swept from the Account held at TD Ameritrade Futures & Forex, to his or her Securities Account held at TD Ameritrade Futures & Forex's affiliate, TD Ameritrade Clearing, Inc. Regardless of where available cash is held, applicable SEC and CFTC rules require proper segregation of Client assets from firm assets. Please note that transferring available cash from the Account to a Securities Account will result in the Client not receiving preferential treatment afforded for funds held in a futures account pursuant to Part 190 of the CFTC's regulations and the U.S. Bankruptcy Code. Client funds held in a Securities Account for the purpose of purchasing securities or held in a portfolio margin account carried as a Securities Account are protected by SIPC. Client should refer to the Securities Account Client Agreement or the SIPC website, http://www.sipc.org/ for further information regarding SIPC coverage. Client may elect to not have available cash transferred from the Account to a Securities Account by contacting TD Ameritrade Futures & Forex New Account Department at 600 W. Chicago, Suite 100, Chicago, IL 60654 or via email at futuressupport@tdameritrade.com.

As permitted by applicable law, Client agrees that TD Ameritrade Futures & Forex may, in its sole and absolute discretion and without prior notice to Client, transfer excess funds or collateral from one Client Account to any other Account that Client maintains with TD Ameritrade Futures & Forex (including any of the Securities Accounts custodied by TD Ameritrade Futures & Forex's affiliate, TD Ameritrade Clearing, Inc.) in such amount as in TD Ameritrade Futures & Forex's judgement may reasonably be required to avoid margin calls or to reduce or satisfy any deficit in the account to which the funds were transferred. TD Ameritrade Futures & Forex, however, is not obligated to do so.

### 4. MARGINS

TD Ameritrade Futures & Forex shall have the right to set and revise margin requirements and to limit, without prior notice to Client, the number of positions which Client may maintain or acquire through TD Ameritrade Futures & Forex. Client will at all times maintain collateral and margin for all Accounts as from time to time may be required by TD Ameritrade Futures & Forex in its sole discretion or demanded by Applicable Law.

### 5. CLIENT OBLIGATIONS

Client agrees to pay promptly on demand any and all sums due to TD Ameritrade Futures & Forex for monies advanced including any unsecured debit balance, with interest thereon at 1% over the prime rate published in The Wall Street Journal. Client agrees to pay when due, TD Ameritrade Futures & Forex's charges for commissions at rates established between the Firm and Client and for related fees and charges as a result of, or related to, the transactions effected under this Agreement, and for other services offered and accepted in connection with the Account. Further, Client undertakes, at any time upon TD Ameritrade Futures & Forex demand, to discharge all obligations to the Firm, or, in the event of a closing of any of Accounts in whole or in part, to pay any deficiency owed, if any, including costs, damages, or attorney fees suffered or paid by TD Ameritrade Futures & Forex, directly or indirectly, in connection with such deficiency. In lieu of requiring the immediate discharge of any Client obligations, TD Ameritrade Futures & Forex may, in its sole discretion, demand security for such obligation and, if elected, for all future obligations in which event Client will either discharge all existing obligations to TD Ameritrade Futures & Forex or furnish security as the Firm demands, and, in that connection, execute and deliver such security agreements, financing statements, and other documents, informs prescribed or approved by TD Ameritrade Futures & Forex as shall be reasonably requested. Client agrees to maintain $1,500.00 Net Liquidating Value in Account at all times. TD Ameritrade Futures & Forex, without prior notice and in its sole discretion, reserves the right to raise Client's minimum Account Net Liquidating Value at any time.

### 6. LIQUIDATION OF POSITIONS

If the Account is under-margined or if TD Ameritrade Futures & Forex, in its sole discretion, determines that it is otherwise insecure with respect to Client's willingness or ability to fulfill his/her obligations hereunder, TD Ameritrade Futures & Forex may in its sole discretion and without prior notice to Client offset any of Client's open positions in Commodity Interests (including futures or options on futures) so as to eliminate such margin deficiency or insecurity, and Client shall remain liable to TD Ameritrade Futures & Forex for any loss or debit balance that results, without regard to (a) whether TD Ameritrade Futures & Forex has adhered to margin or other rules of any contract market, or (b) any other term of this Agreement. Likewise, to the extent permitted by Applicable Law, Client hereby authorizes TD Ameritrade Futures & Forex, without prior notice and in its sole discretion, to liquidate any assets held by TD Ameritrade Clearing, Inc. in a Securities Account to eliminate such margin deficiency or insecurity. This right to offset includes the right, if deemed appropriate in the exercise of the Firm's discretion, to buy and/or sell any related futures and/or options on futures or other property, including but not limited to the use of spreads, straddles, and/or off-exchange transactions, such as an exchange for physical or other cash transaction, including for the Firm's account, in order to effectuate such liquidation. It is understood that a prior demand or call or prior notice of the time and place of such sale or purchase shall not be considered a waiver of TD Ameritrade Futures & Forex's right to sell or buy without demand or notice as herein provided. Client shall remain liable for and shall pay to TD Ameritrade Futures & Forex immediately the amount of any deficiency in any Account of Client with the Firm resulting from any transaction described above. For purposes of this Client Agreement, a reasonable amount of time shall be deemed one hour or less, if in the Firm's sole discretion market conditions required that margin calls must be met in less than one hour.

### 7. LIMITATION OF LIABILITY; INDEMNIFICATION

a. Neither TD Ameritrade Futures & Forex nor its officers, directors, affiliates, and/or employees shall have any responsibility for compliance by Client with any law or regulation governing Client's conduct.

b. Neither TD Ameritrade Futures & Forex nor its officers, directors, affiliates, or employees shall be under any liability whatsoever for any loss or damage sustained by Client as a direct or indirect result of any services provided by the Firm hereunder or for any loss or damage resulting, directly or indirectly, from: (i) any failure or delay or default on the part of Client or any third party, including any custodian or exchange (including any clearinghouse), in providing accurate information or performing its functions; (ii) any event or circumstance beyond the reasonable control of TD Ameritrade Futures & Forex including, but not limited to, (A) any failure or defective performance of any communication, settlement, computer or accounting system or equipment; or (B) performance, non-performance, delays in the transmission or execution of any order due to suspension or termination of trading, the breakdown or failure of the system or of any other transmission system, electronic trading system, or communication facilities, or (C) any governmental, judicial, administrative, exchange, or regulatory or self-regulatory organization order, restriction, or ruling; (iii) strikes or similar labor action; or (iv) any reliance placed by Client on any market or other information supplied to Client by TD Ameritrade Futures & Forex, it being understood that any such information may be unverified and the Firm makes no representation or warranty as to the accuracy or

reasonableness of such information. In no event will TD Ameritrade Futures & Forex or its officers, directors, affiliates, or employees be liable hereunder to Client for consequential, incidental, or special damages, including damages for loss of profit or loss of trading opportunity.

c. In the event that TD Ameritrade Futures & Forex is a party, directly or indirectly, to any claim, dispute, or loss in connection with (i) transactions effected in the Account; (ii) Client's obligations or liabilities arising from the Account, (iii) this Agreement, (iv) Client's use of an electronic trading system of any exchange or other market, or (v) Client's violation of any third party's rights, including, but not limited to, copyright, patent, trademark, proprietary, and privacy rights, Client shall indemnify and reimburse TD Ameritrade Futures & Forex for all losses, damages, fines, penalties, and expenses incurred, including the Firm's reasonable attorney's fees and expenses. The Firm shall have the exclusive right to defend, settle, or compromise any claim or demand instituted by any third party against TD Ameritrade Futures & Forex or against the Firm and Client. Client hereby waives any and all rights Client may have independently to defend, settle, or compromise any such claims or demands and agrees to cooperate to the best of Client's ability with TD Ameritrade Futures & Forex with respect thereto, but the Firm may, in its sole discretion, authorize and require Client to defend, settle, or compromise any such claim or demand as TD Ameritrade Futures & Forex deems to be appropriate at Client's cost, expense, and liability. Client agrees to reimburse TD Ameritrade Futures & Forex on demand for any cost of collection incurred by the Firm in collecting any sums owing by Client under this Agreement and any cost incurred by the Firm in successfully defending itself against any claims asserted by Client, including all attorney's fees, interest, and expenses.

## 8. NOTICES AND CLIENT COMMUNICATIONS

a. Any notices and other communications may be transmitted to Client at the address, telephone number, or email address given herein, or at such other address or telephone number as Client hereafter shall notify TD Ameritrade Futures & Forex in writing. All notices or communications shall be deemed transmitted when telephoned, deposited in the mail, sent via facsimile, electronic transmission, or email by the Firm. Confirmations, purchase and sale statements, and account statements shall be deemed accurate unless written objection is transmitted via facsimile or email to TD Ameritrade Futures & Forex at 773.435.3232 or futuressupport@tdameritrade.com, such transmission to be made by Client immediately upon receipt of such notice.

b. **Electronic Signatures.** Client's use of electronic signatures to sign documents is legally binding in the same manner as if such documents had been manually signed. The use of an electronic version of these documents fully satisfies any requirement that they be provided in writing. If documents are signed electronically, Client represents to have the ability to access and retain a record of the documents. Client is responsible for understanding these documents and agrees to conduct business with TD Ameritrade Futures & Forex by electronic means. Client is obliged to review periodically the websites for changes or modifications.

c. **Consent.** By consenting to the electronic delivery of all information relating to my Account, Client authorizes TD Ameritrade Futures & Forex to deliver all communications by the following means: (1) by email at the email address specified by Client; (2) by posting the communication on the websites or other sites on the Internet where the communication can be read and printed; (3) by sending Client an email that includes a hyperlink to the websites or an address on the Internet where the information is posted, and can be read and printed; and (4) by sending Client a notice that directs Client to an address on the Internet or a place within the websites where the communication is posted and from which it can be read and printed. Such delivery will be an effective delivery to Client for the purposes of any Applicable Rules whether or the communications are accessed or reviewed. Although Client consents to electronic delivery, TD Ameritrade Futures & Forex may elect to deliver communications by other means which shall not affect Client's consent. Client agrees to notify TD Ameritrade Futures & Forex of any change in address. Client may revoke his consent to electronic delivery at any time and should contact TD Ameritrade at 866-839-1100 option 4 or futuressupport@tdameritrade.com to do so.

## 9. COMMUNICATION DELAYS

TD Ameritrade Futures & Forex shall not have any liability to Client for delays in the transmission, clearance, or confirmation of Client's orders due to mechanical, electronic, or computer failure or market congestion or illiquidity, or other causes beyond its control, nor shall it be liable for improper execution, clearance, or confirmation of Client's orders by persons who are not employees of TD Ameritrade Futures & Forex. The price at which an order is executed shall be binding notwithstanding the fact an erroneous report is made. An order, which was executed but in error reported as not executed, shall be binding. TD Ameritrade Futures & Forex shall have no liability to Client arising out of (a) Client's use of or reliance on information provided directly or indirectly through TD Ameritrade's website, whether in the nature of quotations or otherwise, (b) futures transactions not cleared through the Firm, or (c) Client's access to or use of third party websites (or other resources) linked to or otherwise incorporated into or referenced within TD Ameritrade's website.

## 10. ELECTRONIC TRADING

a. Client acknowledges that all orders, whether placed through the Firm's system, through a floor broker or otherwise, are at Client's sole risk. Client shall be solely responsible for all orders entered or attempted to be entered through Client's identifiers. Acceptance of an order for placement does not constitute an agreement or representation by TD Ameritrade Futures & Forex that there is sufficient margin in the Account to support the resulting position. Client acknowledges that the Firm may set minimum net liquidating equity for the Account. Client hereby acknowledges Client's responsibility to keep appraised of current margin requirements in connection with all trading activities, agrees to post all required margin for trades ordered by Client, and agrees to be liable for the losses incurred on all trades ordered by Client, regardless of whether there is sufficient margin posted when the trade is ordered.

b. Under no circumstances shall TD Ameritrade Futures & Forex or any other FCM with whom the Firm has an omnibus or other clearing relationship have any responsibility or liability to Client in the event that, whether because of electronic or other mechanical failure, system failure or delay, acts of God or terrorism, or any other reason, (a) Client is unable to access or use the website or trading software, whether to place an order, receive Account related information, or otherwise engage in any futures related activities, or (b) any exchange or clearing corporation sustains any mechanical, electrical or other failure, delay, interruption, or congestion, whether or not such results in a failure to maintain an orderly market, failure or delay in the execution, clearance, or confirmation of futures transactions for the Account or otherwise. To reduce costs and increase the efficiency in confirming Client's trades and reporting Account data to Client, Client consents to delivery of all his daily statements and margin calls (collectively, "statements") by email, instead of hard copy, to the email address provided by Client. Client acknowledges that some electronic markets permit continuous trading and that access to those markets may not be provided by TD Ameritrade Futures & Forex. Under no circumstances shall TD Ameritrade Futures & Forex bear any liability to Client for any losses that may result from the inability to access markets due to such restrictions. Client shall bear sole responsibility for the cancellation of all unexecuted day orders that can be executed during market hours for which access is not provided by TD Ameritrade Futures & Forex. If TD Ameritrade Futures & Forex believes that execution or attempted execution of any Client order might contravene any Applicable Law or violates the Firm's internal policies, TD Ameritrade Futures & Forex, in its sole discretion, may delay or refuse to execute any order to purchase or sell Commodity Interests for the Account, at any time, and from time to time.

TDA 600 F 03/15

## 11. EXERCISES, ASSIGNMENTS, AND DELIVERIES

With regard to options transactions, Client understands that some exchange clearing houses have established exercise requirements for the tender of exercise instructions and that options will become worthless if Client does not deliver instructions by such expiration times. At least two business days prior to the last trading day in the case of long and short positions in options, Client will give TD Ameritrade Futures & Forex instructions to liquidate, exercise, or allow the expiration of such options, and will deliver to the Firm sufficient funds required in connection with exercise. If such instructions or such funds are not received by TD Ameritrade Futures & Forex prior to the expiration of the option, TD Ameritrade Futures & Forex may permit an option to expire. Client also understands that certain exchanges and clearing houses automatically exercise some "in-the-money" options unless instructed otherwise. Client acknowledges full responsibility for taking action either to exercise or to prevent exercise of an option contract, as the case may be. TD Ameritrade Futures & Forex is not required to take any action with respect to an option, including without limitation any action to exercise a valuable option contract prior to its expiration or to prevent the automatic exercise of an option, except upon Client's express instructions. Client further understands that the Firm may also establish exercise cut-off times, which may be different from the times established by the contract markets or clearing houses. If timely exercise and assignment instructions are not given, Client hereby agrees to waive any and all claims for damage or loss Client might have against TD Ameritrade Futures & Forex arising out of the fact that an option was or was not exercised. Client understands that TD Ameritrade Futures & Forex, or its agents, randomly assign exercise notices to Clients, that all short option positions are subject to assignment at any time, including positions established on the same day that exercises are assigned, and that exercise assignment notices are allocated randomly from among all Clients' short option positions which are subject to exercise. With regard to futures transactions, liquidating instructions on open positions in a current delivery month must be given to TD Ameritrade Futures & Forex at least five business days prior to the first notice day in the case of long positions, and at least five business days prior to the last trading day in the case of short positions. TD Ameritrade Futures & Forex does not allow for futures contracts to be settled with physical delivery of a commodity nor does TD Ameritrade Futures & Forex allow for positions to be held on or after First Notice Day. Client is required to close or roll Client's positions to the next active month prior to First Notice Day. While any positions can be liquidated at the discretion of the TD Ameritrade Futures & Forex Risk Department at any time and without prior notice, open positions (regardless of whether they are long or short) in physically delivered products will be liquidated before First Notice Day or Last Trade Date, whichever occurs first. If funds, documents, or instructions are not received, TD Ameritrade Futures & Forex may, without notice, close out such positions without additional prior notification. TD Ameritrade Futures & Forex shall have no liability to Client for any such action. In the event of an error, omission, or out trade discovered on or after the last day of trading, TD Ameritrade Futures & Forex will abide by the appropriate Exchange rules for an Alternative Delivery Procedure (ADP).

## 12. POSITION LIMITS

In addition to compliance with any position limits that TD Ameritrade Futures & Forex may impose hereunder, Client agrees to comply with any applicable position limits that may be established by the CFTC, other applicable regulators or the rules of any exchange or self regulatory organization, whether Client is acting alone or in concert with others.

## 13. FOREIGN CURRENCY CONVERSIONS

Client will make all deposits in U.S. dollars except as otherwise permitted by TD Ameritrade Futures & Forex. Unless another currency is designated in the confirmation for such transaction, all margin deposits for such contract and any debit or credit made in the Account as a result of liquidating such a contract shall be in U.S. dollars at a rate of exchange determined by the Firm in its sole discretion on the basis of the then prevailing rates of exchange for such foreign currency. If Client places any order that would be settled in a currency other than U.S. dollars or otherwise instructs the Firm to enter into any transaction to be denominated in a currency other than U.S. dollars, then: (a) Client shall be deemed to have authorized the Firm to convert funds to the applicable currency sufficient to meet the applicable margin requirement; (b) the exchange rate for such conversion shall be determined by the Firm on the basis of then-prevailing rates of exchange and the Firm may retain a fee for such conversion; and (c) any profit or loss arising as a result of a fluctuation in the exchange rate affecting such currency shall be for the Account and at the Client's risk. In no event shall TD Ameritrade Futures & Forex be required to effect, or be responsible for, the conversion of funds in anticipation of changes in prevailing rates of exchange. Where applicable, Client shall be deemed to have authorized the holding of funds outside of the U.S., a money center country (as defined in CFTC Rule 1.49), or in a country other than the currency's country of origin if Client fails to object when informed (by receipt of confirmation or otherwise) that funds are held in such jurisdiction.

## 14. INDIVIDUAL ACCOUNT

a. If this is an Individual Account, or Individual Retirement Account ("IRA"), Client represents that this is an Individual or Sole Proprietorship Account and no one else has an interest in the Account.

b. If this is an IRA established under Section 408(a) of the Internal Revenue Code of 1986, as amended ("Code"), or an account of a Roth IRA established under Section 408A of the Code (each, an "IRA"), the undersigned person represents that he or she is the beneficial owner of the IRA, which is the Client hereunder, and has authority: (1) to give any instructions with respect to the account; (2) to receive any demands, notices, confirmations, reports, statements, and other communications of any kind; (3) to sign any other documents related to the opening or maintenance of this account; and (4) generally to deal with TD Ameritrade Futures & Forex in connection herewith as fully and completely as if the trustee or custodian of the IRA had no interest herein.

## 15. JOINT ACCOUNT

If this is a Joint Account, each Client agrees that liability shall be joint and several. Each Client shall have authority: (1) to give any instructions with respect to the Account; (2) to receive any demands, notices, confirmations, reports, statements, and other communications of any kind; (3) to sign any other documents related to the opening or maintenance of the Account; and (4) generally to deal with TD Ameritrade Futures & Forex in connection herewith as fully and completely as if the other joint tenant or tenants had no interest herein. Notwithstanding the foregoing, TD Ameritrade Futures & Forex is authorized to require joint action by the joint tenants on an Account. TD Ameritrade Futures & Forex shall be under no duty or obligation to inquire into the purpose or propriety of any instruction given and shall be under no obligation to see to the application of any funds so delivered.

## 16. NOTIFICATION OF RECORDING

TD Ameritrade Futures & Forex is hereby granted permission to record telephone conversations between its representatives and Client.

TDA 600 F 03/15

## 17. BINDING EFFECT; AMENDMENTS

This is the entire agreement of the parties governing the Account, and supersedes all prior or contemporaneous agreements between Client and TD Ameritrade Futures & Forex concerning the Account. TD Ameritrade Futures & Forex reserves the right to amend this Agreement without prior notice to Client, or as required by Applicable Law. The current version of the Agreement will be posted electronically and Client's continued account activity after such amendment constitutes the Client's agreement to be bound by all amendments to the Agreement, regardless of whether the Client reviews them. No person has the authority to represent that this Agreement will not be enforced in accordance with its terms or to make any representation inconsistent with the terms of the Risk Disclosure for Futures and Options and the Risk Disclosure Statement concurrently delivered to Client. TD Ameritrade Futures & Forex's failure to insist on Client's strict adherence to the terms hereof shall not act as a waiver of its rights to so insist at any time thereafter, all such rights being cumulative and unconditional in nature.

## 18. CLIENT REPRESENTATIONS

Client represents and warrants that: (a) Client has the legal authority and is duly authorized and empowered to execute and deliver this Agreement and to open Accounts and effect transactions in Commodity Interests through TD Ameritrade Futures & Forex, such transactions do not and will not violate any Applicable Law, or any judgment, decree, order, or agreement, to which Client or the Client's property is subject, and this Agreement is binding on and enforceable against Client in accordance with its terms; (b) Client is under no legal disability which would prevent client from trading in Commodity Interests or entering into this Agreement and that all of the information contained in the Account Application is true, complete, and correct as of the date hereof; (c) Client is not an associated person, general partner, employee, or otherwise associated with another FCM or IB under CFTC Regulation 155.3(c); (d) If Client directs TD Ameritrade Futures & Forex to execute block trades, Client represents that it is an eligible contract participant as defined by the Commodity Exchange Act and the CFTC; (e) client will promptly notify TD Ameritrade Futures & Forex in writing of any changes in such information or any change in circumstances which would affect the representations and information given to the Firm or which would in any way affect Client's ability to make any transactions contemplated by or render performance under any term of this Agreement; (f) if Client is an individual, he or she is of majority age, and that he or she is not an employee or a member of any exchange (nor of any corporation of which any exchange owns a majority of the capital stock) nor of a firm registered on any exchange, or if he or she is so employed that a written consent of his or her employer is attached herewith; and (g) Client will notify TD Ameritrade Futures & Forex in writing to liquidate all open Commodity Interest positions in and close his Account if losses therein approach the extent at which the lifestyle of Client or any dependent of Client may become adversely affected.

## 19. CONSENT TO CREDIT CHECK; ANTI-MONEY LAUNDERING PROVISIONS

Client understands an investigation may be made pertaining to his credit standing and his business accounts, and authorizes TD Ameritrade Futures & Forex to contact such banks, financial institutions, and credit agencies as the Firm shall deem appropriate. Client acknowledges that any Account established pursuant to this Agreement shall be subject to anti-money laundering requirements established by applicable government agencies or self-regulating organizations. Accordingly, Client shall promptly provide any documents or certifications requested by TD Ameritrade Futures & Forex that the Firm believes are necessary or advisable to obtain for anti-money laundering compliance purposes.

## 20. ASSIGNABILITY

Client's rights and duties hereunder may not be assigned other than with the written consent of TD Ameritrade Futures & Forex. Client agrees that TD Ameritrade Futures & Forex may assign this Agreement to another FCM upon notice to Client and otherwise in accordance with Applicable Law.

## 21. INTERPRETATION

These section headings are for convenience of reference only and shall not affect the meaning or construction of any provision of this Agreement. If any provision of this Agreement shall be determined to be invalid or unenforceable, the remainder shall not be affected thereby.

## 22. GOVERNING LAW

This Agreement and its enforcement shall be governed by the laws of the State of Nebraska without regard to the conflicts of law provision thereof. No lawsuit, arbitration proceeding, or other claim, regardless of form, arising out of transactions under this Agreement may be brought by Client more than one year after the cause of action arose. Provided, however, that any action brought under the provisions of Section 14 of the Act, may be brought at any time within two years after the cause of action accrues.

## 23. ACKNOWLEDGMENT OF DISCLOSURES

CLIENT HEREBY UNDERSTANDS THE FUTURES CLIENT AGREEMENT AND CONSENTS AND AGREES TO ALL OF THE TERMS AND CONDITIONS OF AGREEMENT SET FORTH ABOVE. CLIENT ACKNOWLEDGES THAT TRADING IN COMMODITY INTERESTS IS SPECULATIVE, INVOLVES A HIGH DEGREE OF RISK, AND IS APPROPRIATE ONLY FOR PERSONS WHO CAN ASSUME RISK OF LOSS IN EXCESS OF THEIR MARGIN DEPOSIT. CLIENT EXPRESSLY ACKNOWLEDGES THAT IT HAS RECEIVED, READ, AND UNDERSTANDS, AND HAS RETAINED COPIES OF CFTC RULE 1.55 RISK DISCLOSURE STATEMENT FOR FUTURES AND OPTIONS. CLIENT ALSO UNDERSTANDS THAT TD AMERITRADE FUTURES & FOREX IS RELYING ON CLIENT TO BE FAMILIAR WITH ANY DISCLOSURES RELATED TO THIS ACCOUNT THAT ARE OR MAY BECOME APPLICABLE.

Investment Products: Not FDIC Insured * No Bank Guarantee * May Lose Value

TD Ameritrade Futures & Forex LLC. Securities brokerage services provided by TD Ameritrade, Inc., and TD Ameritrade Clearing, Inc., members FINRA/SIPC. TD Ameritrade is a trademark jointly owned by TD Ameritrade IP Company, Inc. and The Toronto-Dominion Bank.
© 2015 TD Ameritrade IP Company, Inc. All rights reserved. Used with permission.

TDA 600 F 03/15

**DALE H. VAN KIRK and DIANA K. VAN KIRK, as TRUSTEES OF THE VAN KIRK FAMILY TRUST, and DIANA K. VAN KIRK, individually v. TD AMERITRADE FUTURES & FOREX LLC**

**EXHIBIT "A-2"**

**TO COMPLAINT; DEMAND FOR JURY TRIAL**

 **Ameritrade**

**Risk Disclosure Statement**

**\*Please note: The Commodity Futures Trading Commission ("CFTC") has determined that the firm specific disclosures and financial information referenced in this disclosure, under paragraph 12, are not required to be made available until July 12, 2014.**

The risk of loss in trading commodity futures contracts can be substantial. You should, therefore, carefully consider whether such trading is suitable for you in light of your circumstances and financial resources. You should be aware of the following points:

(1) You may sustain a total loss of the funds that you deposit with your broker to establish or maintain a position in the commodity futures market, and you may incur losses beyond these amounts. If the market moves against your position, you may be called upon by your broker to deposit a substantial amount of additional margin funds, on short notice, in order to maintain your position. If you do not provide the required funds within the time required by your broker, your position may be liquidated at a loss, and you will be liable for any resulting deficit in your account.

(2) The funds you deposit with a futures commission merchant for trading futures positions are not protected by insurance in the event of the bankruptcy or insolvency of the futures commission merchant, or in the event your funds are misappropriated.

(3) The funds you deposit with a futures commission merchant for trading futures positions are not protected by the Securities Investor Protection Corporation even if the futures commission merchant is registered with the Securities and Exchange Commission as a broker or dealer.

(4) The funds you deposit with a futures commission merchant are generally not guaranteed or insured by a derivatives clearing organization in the event of the bankruptcy or insolvency of the futures commission merchant, or if the futures commission merchant is otherwise unable to refund your funds. Certain derivatives clearing organizations, however, may have programs that provide limited insurance to customers. You should inquire of your futures commission merchant whether your funds will be insured by a derivatives clearing organization and you should understand the benefits and limitations of such insurance programs.

(5) The funds you deposit with a futures commission merchant are not held by the futures commission merchant in a separate account for your individual benefit. Futures commission merchants commingle the funds received from customers in one or more accounts and you may be exposed to losses incurred by other customers if the futures commission merchant does not have sufficient capital to cover such other customers' trading losses.

(6) The funds you deposit with a futures commission merchant may be invested by the futures commission merchant in certain types of financial instruments that have been approved by the Commission for the purpose of such investments. Permitted investments are listed in Commission Regulation 1.25 and include: U.S. government securities; municipal securities; money market mutual funds; and certain corporate notes and bonds. The futures commission merchant may retain the interest and other earnings realized from its investment of customer funds. You should be familiar with the types of financial instruments that a futures commission merchant may invest customer funds in.

(7) Futures commission merchants are permitted to deposit customer funds with affiliated entities, such as affiliated banks, securities brokers or dealers, or foreign brokers. You should inquire as to whether your futures commission merchant deposits funds with affiliates and assess whether such deposits by the futures commission merchant with its affiliates increases the risks to your funds.

(8) You should consult your futures commission merchant concerning the nature of the protections available to safeguard funds or property deposited for your account.



TDA 631 04/14

(9) Under certain market conditions, you may find it difficult or impossible to liquidate a position. This can occur, for example, when the market reaches a daily price fluctuation limit ("limit move").

(10) All futures positions involve risk, and a "spread" position may not be less risky than an outright "long" or "short" position.

(11) The high degree of leverage (gearing) that is often obtainable in futures trading because of the small margin requirements can work against you as well as for you. Leverage (gearing) can lead to large losses as well as gains.

(12) In addition to the risks noted in the paragraphs enumerated above, you should be familiar with the futures commission merchant you select to entrust your funds for trading futures positions. The Commodity Futures Trading Commission requires each futures commission merchant to make publicly available on its website firm specific disclosures and financial information to assist you with your assessment and selection of a futures commission merchant. Information regarding this futures commission merchant may be obtained by visiting our website, www.tdameritrade.com.*

ALL OF THE POINTS NOTED ABOVE APPLY TO ALL FUTURES TRADING WHETHER FOREIGN OR DOMESTIC. IN ADDITION, IF YOU ARE CONTEMPLATING TRADING FOREIGN FUTURES OR OPTIONS CONTRACTS, YOU SHOULD BE AWARE OF THE FOLLOWING ADDITIONAL RISKS:

(13) Foreign futures transactions involve executing and clearing trades on a foreign exchange. This is the case even if the foreign exchange is formally "linked" to a domestic exchange, whereby a trade executed on one exchange liquidates or establishes a position on the other exchange. No domestic organization regulates the activities of a foreign exchange, including the execution, delivery, and clearing of transactions on such an exchange, and no domestic regulator has the power to compel enforcement of the rules of the foreign exchange or the laws of the foreign country. Moreover, such laws or regulations will vary depending on the foreign country in which the transaction occurs. For these reasons, customers who trade on foreign exchanges may not be afforded certain of the protections which apply to domestic transactions, including the right to use domestic alternative dispute resolution procedures. In particular, funds received from customers to margin foreign futures transactions may not be provided the same protections as funds received to margin futures transactions on domestic exchanges. Before you trade, you should familiarize yourself with the foreign rules which will apply to your particular transaction.

(14) Finally, you should be aware that the price of any foreign futures or option contract and, therefore, the potential profit and loss resulting therefrom, may be affected by any fluctuation in the foreign exchange rate between the time the order is placed and the foreign futures contract is liquidated or the foreign option contract is liquidated or exercised.

THIS BRIEF STATEMENT CANNOT, OF COURSE, DISCLOSE ALL THE RISKS AND OTHER ASPECTS OF THE COMMODITY MARKETS.

I hereby acknowledge that I have received and understood this risk disclosure statement.

**If this is a Joint account, all Account Owners must sign.**

| X Account Owner's Signature: | Date: |
|---|---|
| X Account Co-Owner's Signature: | Date: |

Investment Products: Not FDIC Insured * No Bank Guarantee * May Lose Value

TD Ameritrade Inc., member FINRA/SIPC/NFA. TD Ameritrade is a trademark jointly owned by TD Ameritrade IP Company Inc. and The Toronto-Dominion Bank. © 2014 TD Ameritrade IP Company Inc. All rights reserved. Used with permission.

TDA 631 04/14

FUTURES

## Futures Trading Disclosures

⏻ Logoff

Here are all of our futures trading disclosures. You must acknowledge that you have received and understand the content of these forms before we can open your account. Once you have read them all, scroll down, complete the Form Acceptance section, and press "Save & Continue".

Click on the following links to view each form.

Print Forms (for your records only)

**Firm Specific Disclosure**

**Risk Disclosure Statement**

**Risk Disclosure for Futures and Options**

**Uniform Futures and Options on Futures Disclosures**

**TD Ameritrade Futures & Forex LLC Futures Account Disclosure**

**Firm Specific Disclosure**

INTRODUCTION

**By clicking "Accept", I hereby acknowledge that I have received and understood the following disclosures (located above):\***
**1) Firm Specific Disclosure**
**2) Risk Disclosure Statement**
**3) Risk Disclosure for Futures and Options**
**4) Uniform Futures and Options on Futures Disclosures**
**5) TD Ameritrade Futures & Forex LLC Futures Account Disclosure**
☑ **Accept - DIANA VAN KIRK**

**Futures Arbitration Agreement:**

Any controversy or claim arising out of or relating to my futures account, transactions with TD Ameritrade Futures & Forex LLC ("TD Ameritrade Futures & Forex") pursuant to the Futures Client Agreement between us or the breach thereof, shall be settled by arbitration in accordance with the rules, then in effect, of the National Futures Association, or the contract market upon which the transaction giving rise to the claim was executed. After receipt of notice from Client that Client intends to submit a controversy to arbitration, or at the time TD Ameritrade Futures & Forex notifies Client that it intends to submit a controversy to arbitration, TD Ameritrade Futures & Forex will provide Client with a list of qualified forums. A "qualified forum" is an organization whose procedures for conducting arbitrations meet Acceptable Practices established by the Commodity Futures Trading Commission ("CFTC"). Client must provide notice of Client's intention to submit a claim to arbitration in writing.

As required by CFTC Rule 166.5, TD Ameritrade Futures & Forex will pay any incremental fees which may be assessed by the arbitration forum for provision of a mixed panel, unless the arbitrators determine that the

undersigned has acted in bad faith in initiating or conducting the arbitration proceeding. Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

**CFTC rules require the inclusion of the following notice in this agreement:**

**THREE FORUMS EXIST FOR THE RESOLUTION OF COMMODITY DISPUTES: CIVIL COURT LITIGATION, REPARATIONS AT THE COMMODITY FUTURES TRADING COMMISSION (CFTC), AND ARBITRATION CONDUCTED BY A SELF-REGULATORY OR OTHER PRIVATE ORGANIZATION.**

**THE CFTC RECOGNIZES THAT THE OPPORTUNITY TO SETTLE DISPUTES BY ARBITRATION MAY IN SOME CASES PROVIDE MANY BENEFITS TO CUSTOMERS, INCLUDING THE ABILITY TO OBTAIN AN EXPEDITIOUS AND FINAL RESOLUTION OF DISPUTES WITHOUT INCURRING SUBSTANTIAL COSTS. THE CFTC REQUIRES, HOWEVER, THAT EACH CUSTOMER INDIVIDUALLY EXAMINE THE RELATIVE MERITS OF ARBITRATION AND THAT YOUR CONSENT TO THIS ARBITRATION AGREEMENT BE VOLUNTARY.**

**BY SIGNING THIS AGREEMENT, YOU: (1) MAY BE WAIVING YOUR RIGHT TO SUE IN A COURT OF LAW; AND (2) ARE AGREEING TO BE BOUND BY ARBITRATION OF ANY CLAIMS OR COUNTERCLAIMS WHICH YOU OR TD AMERITRADE FUTURES & FOREX MAY SUBMIT TO ARBITRATION UNDER THIS AGREEMENT. YOU ARE NOT, HOWEVER, WAIVING YOUR RIGHT TO ELECT INSTEAD TO PETITION THE CFTC TO INSTITUTE REPARATIONS PROCEEDINGS UNDER SECTION 14 OF THE COMMODITY EXCHANGE ACT WITH RESPECT TO ANY DISPUTE THAT MAY BE ARBITRATED PURSUANT TO THIS AGREEMENT. IN THE EVENT A DISPUTE ARISES, YOU WILL BE NOTIFIED IF TD AMERITRADE FUTURES & FOREX INTENDS TO SUBMIT THE DISPUTE TO ARBITRATION. IF YOU BELIEVE A VIOLATION OF THE COMMODITY EXCHANGE ACT IS INVOLVED AND YOU PREFER TO REQUEST A SECTION 14 "REPARATIONS" PROCEEDING BEFORE THE CFTC, YOU WILL HAVE 45 DAYS FROM THE DATE OF SUCH NOTICE IN WHICH TO MAKE THAT ELECTION.**

**YOU NEED NOT SIGN THIS AGREEMENT TO OPEN OR MAINTAIN AN ACCOUNT WITH TD AMERITRADE FUTURES & FOREX. SEE 17 CFR 166.5.**

If you accept this agreement click "I agree".

☑ **I Agree - DIANA VAN KIRK**

**Compliance Events Summary**

| Status | IP Address | Ack | Signature | Modified By | Date Modified |
|---|---|---|---|---|---|
| Form Submitted | 173.197.98.123 | I Agree | Diana K. Van Kirk | garlicdiana | 2015-11-18 17:16:42.913 |
| Approved | 10.136.4.103 | N/A | | rus539 | 2015-11-19 10:43:58.273 |

○ Reviewed but not approved

○ Returned for more information

○ Client Notified

○ Approved

○ Rejected

○ Request Update(After Approval)

**Issue Event Reason**

| | Save & Continue | | Next |
|---|---|---|---|

*Please Note: fields displaying a * are required.*

The risk of loss in trading securities, options, futures and forex can be substantial. Clients must consider all relevant risk factors, including their own personal financial situation, before trading. Options involve risk and are not suitable for all investors. See the Options Disclosure Document: **Characteristics and Risks of Standardized Options**.

Futures and futures options trading is speculative and is not suitable for all investors. Please read the **Risk Disclosure for Futures and Options** prior to trading futures products. A copy can be requested via email at **futuressupport@tdameritrade.com** or via mail to 600 W. Chicago Ave., #100, Chicago, IL 60654-2597.

I understand that checking this box and typing my signature constitutes my legal signature agreeing to the terms and conditions for my account.

Forex trading involves leverage, carries a high level of risk and is not suitable for all investors. Please read the **NFA Booklet: What Investors Need to Know** prior to trading forex products.

Futures and forex accounts are not protected by the Securities Investor Protection Corporation (SIPC). Supporting documentation for any claims, comparisons, recommendations, statistics, or other technical data, will be supplied upon request.

Futures, futures options, and forex trading services provided by TD Ameritrade Futures & Forex LLC. Trading privileges subject to review and approval. Not all clients will qualify. Forex accounts are not available to residents of Ohio or Arizona.

2018 © TD AMERITRADE IP Company, Inc.

FUTURES

## TD Ameritrade Futures & Forex LLC
## Futures Client Agreement

&Logoff

By submitting this account application, the undersigned agrees to all terms of the futures client agreement presented below. The undersigned acknowledges receipt of a copy of this agreement and the risk disclosure statement. The undersigned certifies that the undersigned has read and understands all provisions of this agreement.

Print Form (for your records only)

**TD Ameritrade Futures & Forex LLC:**
**Futures Client Agreement for TDACT422(TdaFuturesMargin)**

In consideration of the agreement of TD Ameritrade Futures & Forex LLC ("TD Ameritrade Futures & Forex" or "the Firm"), a registered Futures Commission Merchant ("FCM") with the CFTC, to act as broker for the undersigned ("Client") in the purchase or sale of futures contracts and options on futures (hereinafter, "Commodity Interests"), in the Client's account for trading futures ("Account") Client agrees, in respect to all Accounts that Client now has or may at any future time have with TD Ameritrade Futures & Forex, or its successors, including Accounts from time to time closed and then reopened, as follows:

**1. AUTHORIZATION AND ACKNOWLEDGMENTS**
  a. Client understands that TD Ameritrade Futures & Forex has not undertaken and will not undertake an

**You acknowledge that by executing this Agreement you understand that the terms and conditions of the Account Application are incorporated herein by this reference and made a part hereof.**

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT:**

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means to you: When you open an account, we will ask for your name address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**Compliance Events Summary**

| Status | IP Address | Ack | Signature | Modified By | Date Modified |
|---|---|---|---|---|---|
| Form Submitted | 173.197.98.123 | I Agree | Diana K. Van Kirk | garlicdiana | 2015-11-18 17:18:23.38 |
| Approved | 10.136.4.103 | N/A | | rus539 | 2015-11-19 10:43:58.387 |

○ Reviewed but not approved

○ Returned for more information

○ Client Notified

○ Approved

○ Rejected

○ Request Update(After Approval)

**Issue Event Reason**

[ Save & Continue ]     [ Next ]

*Please Note: fields displaying a * are required.*

The risk of loss in trading securities, options, futures and forex can be substantial. Clients must consider all relevant risk factors, including their own personal financial situation, before trading. Options involve risk and are not suitable for all investors. See the Options Disclosure Document: **Characteristics and Risks of Standardized Options**.

Futures and futures options trading is speculative and is not suitable for all investors. Please read the **Risk Disclosure for Futures and Options** prior to trading futures products. A copy can be requested via email at **futuressupport@tdameritrade.com** or via mail to 600 W. Chicago Ave., #100, Chicago, IL 60654-2597.

I understand that checking this box and typing my signature constitutes my legal signature agreeing to the terms and conditions for my account.

Forex trading involves leverage, carries a high level of risk and is not suitable for all investors. Please read the **NFA Booklet: What Investors Need to Know** prior to trading forex products.

Futures and forex accounts are not protected by the Securities Investor Protection Corporation (SIPC). Supporting documentation for any claims, comparisons, recommendations, statistics, or other technical data, will be supplied upon request.

Futures, futures options, and forex trading services provided by TD Ameritrade Futures & Forex LLC. Trading privileges subject to review and approval. Not all clients will qualify. Forex accounts are not available to residents of Ohio or Arizona.

2018 © TD AMERITRADE IP Company, Inc.

FUTURES

## TD Ameritrade Futures & Forex LLC Addendum                        Logoff

**Sign and Click "Agree" to the Addendum Below!**

I agree to promptly satisfy all margin and maintenance calls and understand and acknowledge that debit balances in all of my account(s) shall be charged with interest as required by all applicable statutes, rules, regulations, and procedures or as deemed necessary by TD Ameritrade Futures & Forex LLC. I understand that I am liable for payment upon demand of any obligations owed relating to my account and that my margin account can and may be liquidated at any time in order to meet margin requirements without demand or notice to me. I acknowledge that I have read and agree to be bound by all terms and provisions set forth in the TD Ameritrade Futures & Forex LLC Futures Client Agreement.

**Compliance Events Summary**

| Status | IP Address | Ack | Signature | Modified By | Date Modified |
|--------|-----------|-----|-----------|-------------|---------------|
| Form Submitted | 173.197.98.123 | I Agree | Dale H. Van Kirk | garlicdiana | 2015-11-18 17:18:43.28 |
| Approved | 10.136.4.103 | N/A | | rus539 | 2015-11-19 10:43:58.473 |

○ Reviewed but not approved
○ Returned for more information
○ Client Notified
○ Approved
○ Rejected
○ Request Update(After Approval)
**Issue Event Reason**

[ Save & Continue ]   [ Next ]

*Please Note: fields displaying a \* are required.*

The risk of loss in trading securities, options, futures and forex can be substantial. Clients must consider all relevant risk factors, including their own personal financial situation, before trading. Options involve risk and are not suitable for all investors. See the Options Disclosure Document: **Characteristics and Risks of Standardized Options**.

Futures and futures options trading is speculative and is not suitable for all investors. Please read the **Risk Disclosure for Futures and Options** prior to trading futures products. A copy can be requested via email at **futuressupport@tdameritrade.com** or via mail to 600 W. Chicago Ave., #100, Chicago, IL 60654-2597.

I understand that checking this box and typing my signature constitutes my legal signature agreeing to the terms and conditions for my account.

Forex trading involves leverage, carries a high level of risk and is not suitable for all investors. Please read the **NFA Booklet: What Investors Need to Know** prior to trading forex products.

Futures and forex accounts are not protected by the Securities Investor Protection Corporation (SIPC). Supporting documentation for any claims, comparisons, recommendations, statistics, or other technical data, will be supplied upon request.

Futures, futures options, and forex trading services provided by TD Ameritrade Futures & Forex LLC. Trading privileges subject to review and approval. Not all clients will qualify. Forex accounts are not available to residents of Ohio or Arizona.

2018 © TD AMERITRADE IP Company, Inc.

DALE H. VAN KIRK and DIANA K. VAN KIRK, as TRUSTEES OF THE VAN KIRK FAMILY TRUST, and DIANA K. VAN KIRK, individually v. TD AMERITRADE FUTURES & FOREX LLC

EXHIBIT "A-3"

TO COMPLAINT; DEMAND FOR JURY TRIAL

# Futures Account Signature Card
# U.S. Citizen



| Issue Name | Time of Submission/Last Update |
|---|---|
| CME_Vendor_Agreement | 2015-11-20 16:15 |
| Trust_Entity_Info | 2015-11-20 16:16 |
| W9_Form | 2015-11-20 16:16 |
| Futures_Information | 2015-11-20 16:16 |
| Futures_Disclosures | 2015-11-20 16:17 |
| Futures_Customer_Agreement | 2015-11-20 16:17 |
| Futures_Signature_Card | 2015-11-20 16:18 |

☒ Under penalties of perjury, I certify that: (1) the number shown on this form is my correct taxpayer identification number, and (2) I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and (3) I am a U.S. citizen or other U.S. person, and (4) The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

☐ If I have been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding because I have failed to report all interest and dividends on my tax return, I must cross out (2) in this certification.

The IRS does not require your consent to any provision of this document other than the certification required to avoid backup withholding.

Trust Name:      Dale H. Van Kirk and Diana K Van Kirk
Tax Id:
Account Info:    TDACT419   [Trust]

Name:            Van Kirk | Dale | H.
Tax Id/SSN:
Address:         ~~3495 Rancho Vista Ct~~

Tel: 805-801-2945
e-mail: garlicdale@hotmail.com
P.O. Box 84
San Luis Obispo, Calif 93406

~~GILROY, CA~~
UNITED STATES
~~95020~~

Signature:      [signature: Dale H. Van Kirk]      [signature: Diana K Van Kirk]

By signing the Signature Card I affirm that all information submitted in fulfillment of the application forms listed above is true and correct and I agree to be bound by the terms of all documents.

Page 2

**DALE H. VAN KIRK and DIANA K. VAN KIRK, as TRUSTEES OF THE VAN KIRK FAMILY TRUST, and DIANA K. VAN KIRK, individually v. TD AMERITRADE FUTURES & FOREX LLC**

## EXHIBIT "B"

## TO COMPLAINT; DEMAND FOR JURY TRIAL

**FUTURES**

## Futures Trading Disclosures

ⓐLogoff

Here are all of our futures trading disclosures. You must acknowledge that you have received and understand the content of these forms before we can open your account. Once you have read them all, scroll down, complete the Form Acceptance section, and press "Save & Continue".

Click on the following links to view each form.

Print Forms (for your records only)

**Firm Specific Disclosure**

**Risk Disclosure Statement**

**Risk Disclosure for Futures and Options**

**Uniform Futures and Options on Futures Disclosures**

**TD Ameritrade Futures & Forex LLC Futures Account Disclosure**

**Firm Specific Disclosure**

**INTRODUCTION**

**By clicking "Accept", I hereby acknowledge that I have received and understood the following disclosures (located above):***
**1) Firm Specific Disclosure**
**2) Risk Disclosure Statement**
**3) Risk Disclosure for Futures and Options**
**4) Uniform Futures and Options on Futures Disclosures**
**5) TD Ameritrade Futures & Forex LLC Futures Account Disclosure**
☑ **Accept - DIANA VAN KIRK**

**Futures Arbitration Agreement:**

Any controversy or claim arising out of or relating to my futures account, transactions with
TD Ameritrade Futures & Forex LLC ("TD Ameritrade Futures & Forex") pursuant to the Futures Client Agreement between us or the breach thereof, shall be settled by arbitration in accordance with the rules, then in effect, of the National Futures Association, or the contract market upon which the transaction giving rise to the claim was executed. After receipt of notice from Client that Client intends to submit a controversy to arbitration, or at the time TD Ameritrade Futures & Forex notifies Client that it intends to submit a controversy to arbitration, TD Ameritrade Futures & Forex will provide Client with a list of qualified forums. A "qualified forum" is an organization whose procedures for conducting arbitrations meet Acceptable Practices established by the Commodity Futures Trading Commission ("CFTC"). Client must provide notice of Client's intention to submit a claim to arbitration in writing.

As required by CFTC Rule 166.5, TD Ameritrade Futures & Forex will pay any incremental fees which may be assessed by the arbitration forum for provision of a mixed panel, unless the arbitrators determine that the

undersigned has acted in bad faith in initiating or conducting the arbitration proceeding. Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

**CFTC rules require the inclusion of the following notice in this agreement:**

**THREE FORUMS EXIST FOR THE RESOLUTION OF COMMODITY DISPUTES: CIVIL COURT LITIGATION, REPARATIONS AT THE COMMODITY FUTURES TRADING COMMISSION (CFTC), AND ARBITRATION CONDUCTED BY A SELF-REGULATORY OR OTHER PRIVATE ORGANIZATION.**

**THE CFTC RECOGNIZES THAT THE OPPORTUNITY TO SETTLE DISPUTES BY ARBITRATION MAY IN SOME CASES PROVIDE MANY BENEFITS TO CUSTOMERS, INCLUDING THE ABILITY TO OBTAIN AN EXPEDITIOUS AND FINAL RESOLUTION OF DISPUTES WITHOUT INCURRING SUBSTANTIAL COSTS. THE CFTC REQUIRES, HOWEVER, THAT EACH CUSTOMER INDIVIDUALLY EXAMINE THE RELATIVE MERITS OF ARBITRATION AND THAT YOUR CONSENT TO THIS ARBITRATION AGREEMENT BE VOLUNTARY.**

**BY SIGNING THIS AGREEMENT, YOU: (1) MAY BE WAIVING YOUR RIGHT TO SUE IN A COURT OF LAW; AND (2) ARE AGREEING TO BE BOUND BY ARBITRATION OF ANY CLAIMS OR COUNTERCLAIMS WHICH YOU OR TD AMERITRADE FUTURES & FOREX MAY SUBMIT TO ARBITRATION UNDER THIS AGREEMENT. YOU ARE NOT, HOWEVER, WAIVING YOUR RIGHT TO ELECT INSTEAD TO PETITION THE CFTC TO INSTITUTE REPARATIONS PROCEEDINGS UNDER SECTION 14 OF THE COMMODITY EXCHANGE ACT WITH RESPECT TO ANY DISPUTE THAT MAY BE ARBITRATED PURSUANT TO THIS AGREEMENT. IN THE EVENT A DISPUTE ARISES, YOU WILL BE NOTIFIED IF TD AMERITRADE FUTURES & FOREX INTENDS TO SUBMIT THE DISPUTE TO ARBITRATION. IF YOU BELIEVE A VIOLATION OF THE COMMODITY EXCHANGE ACT IS INVOLVED AND YOU PREFER TO REQUEST A SECTION 14 "REPARATIONS" PROCEEDING BEFORE THE CFTC, YOU WILL HAVE 45 DAYS FROM THE DATE OF SUCH NOTICE IN WHICH TO MAKE THAT ELECTION.**

**YOU NEED NOT SIGN THIS AGREEMENT TO OPEN OR MAINTAIN AN ACCOUNT WITH TD AMERITRADE FUTURES & FOREX. SEE 17 CFR 166.5.**

If you accept this agreement click "I agree".

☑ **I Agree - DIANA VAN KIRK**

**Compliance Events Summary**

| Status | IP Address | Ack | Signature | Modified By | Date Modified |
|---|---|---|---|---|---|
| Form Submitted | ███████ | I Agree | Diana K. Van Kirk | ███████ | 2015-11-18 17:16:42.913 |
| Approved | 10.136.4.103 | N/A | | rus539 | 2015-11-19 10:43:58.273 |

○ Reviewed but not approved
○ Returned for more Information
○ Client Notified
○ Approved
○ Rejected
○ Request Update(After Approval)
**Issue Event Reason**